IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM STEWART,
    *Petitioner*,

v.

UNITED STATES OF AMERICA,
    *Respondent*.

Criminal No. ELH-18-00493
Related Civil No. ELH-19-2771

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a post-conviction petition filed under 28 U.S.C. § 2255 by William Stewart (ECF 281), as supplemented. ECF 286. I shall refer to ECF 281 and ECF 286 collectively as the "Petition." The government opposes the Petition. ECF 313.

Under 28 U.S.C. § 2255(b), the Court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). This is such a case. No hearing is necessary. Nevertheless, because Stewart proceeds pro se, his submissions shall be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Alley v. Yadkin County Sheriffs Dept.*, 698 Fed. App'x 141, 142 (4th Cir. 2017) (per curiam).

For the reasons that follow, I shall deny the Petition.

**I. Background**

William Stewart and ten others were charged in a Superseding Indictment filed October 16, 2018. ECF 35. On May 28, 2019, Petitioner entered a plea of guilty to Count

One, charging conspiracy to distribute heroin, in violation of 21 U.S.C. § 846. ECF 195.[1] The plea was tendered pursuant to a Plea Agreement. ECF 197. Notably, the plea was entered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of incarceration of 78 months. *Id.* ¶¶ 9, 10.

In connection with Stewart's plea of guilty, the Court conducted a thorough proceeding under Fed. R. Crim. P. 11, at which the defendant was placed under oath. *See* ECF 306 (Transcript). Petitioner acknowledged that he understood the charges and the terms of his Plea Agreement. Stewart also acknowledged that he was satisfied with the performance of his attorney. *See* ECF 306.

The Statement of Facts (ECF 197 at 9) reflected that Stewart participated in the drug trafficking organization ("DTO") from at least April 2018 through October 2018. Moreover, he stipulated that it was foreseeable to him that the DTO would distribute at least 100 grams of heroin, but less than 400 grams. *Id*.

The amended Presentence Report ("PSR," ECF 256) reflected a final offense level of 21 and a criminal history category of IV. *Id.* ¶¶ 22, 30. The advisory sentencing guidelines (the "Guidelines" or "U.S.S.G.") called for a sentence ranging from 57 to 71 months of incarceration. *Id.* ¶ 75.

Sentencing was held on July 30, 2019. ECF 253; *see also* ECF 308 (Transcript). The government reviewed the evidence, which included the seizure of over a kilogram of heroin from the DTO, which was "laced with fentanyl." ECF 308 at 8. The government also addressed evidence from a pole camera, which demonstrated defendant's role as a

---

[1] The guilty plea proceeding was initially set for May 3, 2019. *See* ECF 158. However, because of concerns expressed by the defendant, the Court did not proceed. ECF 178.

manager. *Id.*; *see also id.* at 22, 23, 25-26. The prosecutor stated that, in plea negotiations, it "permitted" the defendant "to admit to the quantity of 100 grams or more of heroin" to avoid an offense level of 30 and a mandatory minimum sentence of ten years. *Id.* at 9. As the government put it, the defendant's "guidelines today" are the result of the "negotiation of the parties." *Id.* at 10. He added that, during "extensive" plea negotiations, *id.*, the parties agreed to the sentence of 78 months. *Id.* at 11.

Defense counsel agreed that "78 months is appropriate." *Id.* at 12. Moreover, he described the plea negotiations as "extensive, extensive, extensive . . . .," in which the government agreed not to pursue certain "enhancements." *Id.* at 12; *see also id.* at 20.

Thereafter, in his allocution, the defendant complained that there was no evidence that he was part of the conspiracy. *Id.* at 14-16. He also raised the issue of more lenient sentences for the codefendants.

In response, the Court asked Stewart, several times, if he wanted to withdraw his guilty plea. *Id.* at 16, 19, 23. Defendant said, *id.* at 16: "I'm not trying to withdraw my plea . . . I just want you to adopt the guidelines . . . ." *See also id.* at 24, 26. As noted, the top of the guidelines called for a sentence of 71 months, rather than the 78 months contemplated in the Plea Agreement, under Rule 11(c)(1)(C).

In accordance with the Plea Agreement (ECF 197, ¶¶ 9, 10), the Court sentenced Stewart to the agreed upon term of 78 months of incarceration. *See* ECF 254 (Judgment).

The Statement of Reasons (ECF 255) reflects that the "C plea" called for a sentence above the Guidelines. However, the proposed sentence took into account that the government had agreed not to seek a sentencing enhancement based on the defendant's

3

role in the offense. Nor did it insist on a plea to a drug quantity of one kilogram, which would have carried a mandatory minimum sentence.

No appeal was filed. But, about six weeks after sentencing, Stewart filed his Petition, alleging ineffective assistance of counsel. *See* ECF 281; ECF 286.

## II. The Contentions

Stewart argues ineffective assistance of counsel. His claim focuses primarily on his dissatisfaction because his codefendants received more lenient sentences. ECF 286 at 4. In addition, he complains because he received an above Guidelines sentence, instead of a Guidelines sentence. *Id.* at 5. Further, Stewart asserts that the prosecutor lied. *Id.* He also claims that he agreed to plead guilty because he was "threatened" with a Superseding Indictment charging him with a drug quantity of a kilogram. ECF 281 at 1. A conviction on that basis would have called for a mandatory minimum sentence of ten years. And, he argues that his lawyer failed to show him any evidence of an overt act linking him to the drug conspiracy.[2]

## III. Section 2255

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, 902 F.3d

---

[2] This contention was reviewed by the government and defense counsel at sentencing.

420, 426 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Under § 2255, the Petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). Notably, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

Claims previously litigated on direct appeal are generally not cognizable under § 2255. *Schlup v. Delo*, 513 U.S. 298, 318-19 (1995). As the Court said in *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976), a petitioner "will not be allowed to recast, under the guise of a collateral attack, questions fully considered" and decided on direct appeal.

On the other hand, a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal generally constitutes a procedural default that bars presentation of the claim, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and

citations omitted); *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that where the petitioner "failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'") (citation omitted).

If the "cause and prejudice" standard applies, however, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Put another way, prejudice does not support relief from a procedural default, in the absence of a showing of cause. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). The Fourth Circuit recently said, in the context of a habeas case under 28 U.S.C. § 2254:[3] "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (quoting *Schlup*, 513 U.S. at 325). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

In order to show "actual innocence," then, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623. Moreover, the petitioner must meet his burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583 (emphasis added); *see Bousley*, 523 U.S. at 623.

---

[3] "[T]he grounds for relief under § 2255 are equivalent to those encompassed by § 2254 [and] § 2255 was intended to mirror § 2254 in operative effect." *Davis v. United States*, 417 U.S. 333, 344 (1974).

But, of relevance here, there is no procedural default as to claims concerning ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 509 (2003). Such claims ordinarily are not litigated on direct appeal. Rather, claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010); *see also United States v. Ladson*, 793 Fed. App'x 202 (4th Cir. 2020) (per curiam). Instead, claims of ineffective assistance of counsel are litigated in a § 2255 action, to allow for development of the record. *Massaro*, 538 U.S. at 504-06; *Ladson*, 793 Fed. App'x at 202.

### IV. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United*

*States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has said that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court observed, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

9

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Of import here, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson,* 397 U.S. 749, 771 (1970). But, in that circumstance, the prejudice prong of the *Strickland* test is slightly modified. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit described a defendant's burden in the context of a post-guilty plea claim of ineffective assistance of counsel and said, *id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Accord Burket v. Angelone,* 208 F.3d 172, 189 (4th Cir. 2000); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294–99 (4th Cir. 1992).

In *Hill*, 474 U.S. 52, the Supreme Court explained that, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). And, as noted, in

assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Moreover, when a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005).

*Hooper*, 845 F.2d 471, provides guidance. In that case, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. The Court was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that

Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding. *Id.*

### V. Discussion

Petitioner's Plea Agreement contained an extensive factual stipulation in which the Petitioner admitted his guilt to the charged offense. ECF 313-1. At the end of the plea agreement, the Petitioner affirmed in writing the following statement, *id.* at 7-8.

> I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

On May 28, 2019, the Court conducted a Rule 11 plea colloquy, at which the Petitioner was placed under oath. ECF 313-2 (Transcript) at 2. The Court advised Stewart of the nature of the charge to which he pleaded guilty and the maximum punishment he faced. *Id.* at 8-9. The Court also advised him that he was pleading guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), by which the parties had agreed to a sentence of 78 months of incarceration. *Id.* at 13-14.

During the plea advisement, the Court asked Stewart whether he had taken any medications or alcohol in the last twenty-four hours, and Petitioner advised that he had done so. *Id.* at 5. The Court also asked Petitioner whether he had been treated recently for any mental health issue, and Petitioner indicated that he had not. *Id.* at 4. And, Petitioner advised the Court that he was satisfied with the services of his attorney. *Id.* at 5- 6.

The Court then reviewed the terms of the Plea Agreement with Petitioner. He confirmed that no one had threatened him or forced him to plead guilty, and no promises

13

had been made to induce him to plead guilty, other than as stated in the Plea Agreement. *Id.* at 25.

Further, the Court reviewed with Petitioner the important rights he waived by pleading guilty. *Id.* at 18-22. Thereafter, the government set forth the stipulated facts contained in the Plea Agreement. *Id.* at 27-28. The Petitioner confirmed that the factual summary was accurate. *Id.* at 28.

In sum, defendant indicated that he understood the charges and the evidence against him. He admitted that from at least April 2018 through October 2018, he participated in a drug trafficking organization. Moreover, he admitted that he transported drugs to the drug shop, monitored drug sales by other members of the conspiracy, and collected drug proceeds. Moreover, Stewart admitted that on June 18, 2018, he transported drugs to the drug shop, consisting of over 100 gel capsules of heroin.

Petitioner claims that he received ineffective assistance of counsel, arguing that he did not understand his offense and that his attorney did not advise him as to how he had actually committed the offense of conspiracy to distribute heroin. ECF 281 at 1. This claim, however, contradicts Petitioner's statements, made under oath during the guilty plea proceeding. A defendant's sworn, in-court declarations affirming a plea agreement carry a "strong presumption of verity" and establish a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. White*, 366 F.3d at 395-96 (4th Cir. 2004). This presumption exists because, at the time of the Rule 11 colloquy, the defendant testifies under oath regarding the substance of the plea agreement and the court can carefully evaluate the defendant's comprehension of the terms of the plea. Indeed, when a petitioner makes allegations in a § 2255 motion that

contradict these sworn statements, the court may summarily deny the petition, without holding an evidentiary hearing. *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005).

In *Lemaster*, the Fourth Circuit rejected a § 2255 petition claiming ineffectiveness assistance of counsel for a defendant who had pleaded guilty. The defendant alleged that his attorney failed to adequately explain the plea agreement, that he was threatened with deprivation of medical care if he did not plead guilty, and that his attorney advised him to plead guilty nonetheless. *Id.* at 222. These claims contradicted the defendant's statements made under oath during the Rule 11 colloquy. The Fourth Circuit affirmed the district court's denial of the § 2255 petition. *Id.*

Courts must be able to rely on a defendant's sworn statements made during a Rule 11 colloquy, especially when those statements affirm a written plea agreement that a defendant already signed. When a defendant makes allegations in a § 2255 motion that contradict those sworn statements, then a court should view the allegations as "'palpably incredible'" and "'patently frivolous or false.'" *Lemaster*, 403 F.3d at 221 (quoting *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975)). Consequently, absent extraordinary circumstances, a court should, without holding an evidentiary hearing, dismiss a § 2255 motion that relies on claims that contradict a defendant's sworn statements made during a Rule 11 colloquy. *Lemaster*, 403 F.3d at 222; *see also Fields v. Attorney General of Maryland*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citation omitted) (holding that when a defendant affirms under oath that he is satisfied with his attorney, the defendant is bound by his statements, absent "clear and convincing evidence to the contrary"). Entertaining such § 2255 motions or holding evidentiary hearings defeats the primary

virtue of Rule 11 colloquies in "permitting quick disposition of baseless collateral attacks." *Blackledge*, 431 U.S. at 79, n. 19.

Petitioner offers no evidence to support his claim that he did not understand the charges or that his attorney failed to advise him in any meaningful way. Instead, Petitioner asks the Court to vacate his guilty plea because he does not like the sentence he brokered in his Plea Agreement. Buyer's remorse does not constitute a basis for the Court to vacate Petitioner's guilty plea.[4]

### V. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[5] 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*,

---

[4] Defendant also seems to assume, erroneously, that all codefendants should have received identical sentences. The sentencing Court makes an individualized assessment of each defendant and the facts pertinent to each co-conspirator. For example, other defendants may have had a more favorable criminal history.

[5] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the Fourth Circuit.

16

542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.

An Order follows.

Date: March 26, 2020                                                /s/
                                                                    Ellen L. Hollander
                                                                    United States District Judge